UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-20923-CR-ALTMAN

**UNITED STATES**,

    *Plaintiff*,

v.

**AARON EMANUEL WALKER**,

    *Defendant.*
_____/

## ORDER

Aaron Walker, a convicted fraudster with "bad seasonal allergies," asks for compassionate release because of the COVID-19 pandemic. *See* Motion for Compassionate Release [ECF No. 284].[1] We deny his Motion for four reasons. *First*, he hasn't exhausted his administrative remedies. *Second*, he's failed to substantiate his claim that "extraordinary and compelling circumstances" justify his release. *Third*, the § 3553(a) factors weigh heavily against a reduction. *Fourth*, he's failed to show that he's no longer a danger to the community.[2]

---

[1] The Government filed a timely response, *see* Response [ECF No. 285]; Walker chose never to reply, *see* Docket; and the time to do so has passed, *see* S.D. FLA. L. R. 7(c)(1)(A).

[2] The Government argues that Walker's pending appeal divests this Court of jurisdiction. *See* Response at 2 (citing *United States v. Rosario*, 2020 WL 3100461 (S.D.N.Y. June 11, 2020)). By not filing a Reply, Walker seems to concede the point. *See* Docket. Nevertheless, as the Government points out, "[i]f a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may: (1) defer considering the motion; (2) *deny the motion*; or (3) state either that it would grant the motion if the court of appeals remands for that purpose[.]" FED. R. CRIM. P. 37(a) (emphasis added). In other words, a court may deny a motion it has no jurisdiction to grant. Since we're denying Walker's Motion, we needn't worry about the Government's jurisdictional concerns.

## THE FACTS

The Defendant, Aaron Walker, is 35 years old. *See* Response at 10. In 2019, Walker pled guilty to two counts of a three-count indictment.³ *See* Plea Agreement [ECF No. 145]. In doing so, he admitted that he and his co-conspirators had fraudulently obtained other people's personal identifying information ("PII") and, using that PII, had opened Sprint accounts in those other people's names. *See* Factual Proffer [ECF No. 144]. After setting up these false accounts, Walker "would go to a Sprint store, access the fraudulent account, and charge thousands of dollars' worth of cellular phones to the account and never pay for them." *Id.* at 2. Walker agreed that he was personally responsible for $28,000 in losses. *Id.* In exchange for his guilty plea on Count 7 ("[u]sing [an] unauthorized access device to obtain goods of more than $1,000 in value") and Count 14 ("Aggravated Identity Theft"), the Government dismissed the remaining count against him. *See* Plea Agreement.

On September 18, 2019, this Court sentenced Walker to 24 months in prison—10 months for Count 7 and 24 for Count 14, both to run consecutively. *See* Judgment [ECF No. 216]. Walker doesn't say what percentage of his sentence he's served. *See generally* Motion. Nor does he outline his projected release date. *See id.* Either way, as of this writing, Walker (according to the BOP) has a projected release date of December 6, 2021, *see* BUREAU OF PRISONS INMATE LOOKUP, *bop.gov/inmateloc/* (last accessed May 3, 2021). He thus has 7 months—or about 20.5%—of his sentence remaining.

## ANALYSIS

Section 3582 sets out the order in which this Court should analyze a criminal defendant's entitlement to a sentencing reduction. *First*, when the defendant brings the motion himself, the Court must ascertain whether he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [whether there has been a] lapse of

---

³ The Indictment had additional counts against other Defendants.

30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(a). *Second*, the Court should "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *Id. Third*, the Court should turn to the "extraordinary and compelling reasons" test, as outlined in U.S.S.G. § 1B1.13 cmt. n.1. And *fourth*, the Court should determine whether the defendant poses a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.*; *see United States v. Stuyvesant*, 454 F.Supp.3d 1236, 1238 (S.D. Fla. 2020) (applying the framework). The Court will discuss each of these four steps in turn.

### I. Exhaustion of Administrative Rights to Appeal

Walker seems to concede that he hasn't exhausted his administrative remedies. He, in fact, never alleges that he asked the Warden of his facility for compassionate release, argues that the Court can waive the exhaustion requirement, and doesn't challenge the Government's assertion that he's failed to exhaust his remedies. *See* Motion at 2–3; Response at 3.

This Court finds no merit in Walker's contention that federal judges are authorized to waive the statutory exhaustion requirement. *See United States v. Leija*, 2020 WL 3547029, at *3 (S.D. Fla. June 30, 2020). As this Court has said, the Supreme Court has distinguished between exhaustion requirements that are mandated by statute and those that are judicially-created. *See McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). "Where Congress specifically mandates, exhaustion is required. . . . But where Congress has not clearly required exhaustion, sound judicial discretion governs." *Id.* (cleaned up). The Eleventh Circuit has made this dichotomy between statutory and judicial exhaustion requirements pellucid. *See Alexander v. Hawk*, 159 F.3d 1321, 1326 (11th Cir. 1998) ("Mandatory exhaustion is not satisfied by a judicial conclusion that the requirement need not apply."). As these cases make plain, federal judges may not waive exhaustion requirements that appear unambiguously in the text of a statute. *See Nesbitt v. Candler Cty.*, 945 F.3d 1355, 1358 (11th Cir. 2020) ("In construing

3

a statute we must begin, and often should end as well, with the language of the statute itself." (quoting *United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998) (en banc))); *cf.* A. SCALIA & B. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 69 (2012) ("The ordinary-meaning rule is the most fundamental semantic rule of interpretation.").

And the text of § 3582(c)(1)(A) could not be clearer. It says, in pertinent part, that a court "may not" modify a term of imprisonment until "*after* the defendant has *fully exhausted all* administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after "30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." (emphasis added). This language is unambiguous and may not be altered by judicial fiat. *See United States v. Kranz*, 2020 WL 2559551, at *2 (S.D. Fla. May 20, 2020) ("The language that Congress chose to use is clear and unambiguous. The Court cannot read exceptions into § 3582(c)(1)(A).").

Walker, in short, has failed to exhaust his administrative remedies—and so, his Motion must be **DENIED**. Nevertheless, as the Court explains below, even if Walker had exhausted his administrative rights to appeal, his Motion would still fail.

## II. 18 U.S.C. § 3553

After considering the relevant § 3553 factors, this Court sentenced Walker to 33 months in prison. *See* Judgment at 2. In his appeal, which is pending, Walker doesn't object to the Court's consideration of the § 3553 factors. *See* Brief of Defendant/Appellant at 1, *United States v. Walker*, No. 19-14647-B (11th Cir. Mar. 17, 2020).

In this Motion, though, Walker argues that the § 3553 factors militate in favor of release because (1) he was convicted of a non-violent economic crime, (2) his participation in the conspiracy was shorter than that of every other co-conspirator, and (3) the dollar loss attributable to him was less than (almost) every other co-conspirator. *See* Motion at 3.

4

But the Court already considered Walker's lesser role in giving him a lower sentence than it handed out to most of his co-defendants. So, for instance, Anthony Acosta was sentenced to 57 months, *see* Acosta Judgment [ECF No. 242]; Nilberto Benavides got 44 months, *see* Benavides Judgment [ECF No. 215]; Steve Bryan Rojas got 39 months, *see* Rojas Judgment [ECF No. 253]; and Francisco Mata got 34 months, *see* Mata Judgment [ECF No. 168]—all more than Walker received. The Court, it's true, did give Anielka Arauz 32 months, *see* Arauz Judgment [ECF No. 269], and Amaris Sampson 29, *see* Sampson Judgment [ECF No. 214]—but only after concluding that (1) Sampson was the least culpable of the Defendants and (2) Arauz (among other mitigating circumstances) was lured into the conspiracy by her boyfriend (Benavides). Walker's sentence of 33 months is thus the third lowest of the seven—only three months and one month longer than Sampson's and Arauz's, respectively. Perhaps for this reason, Walker concedes that "the sentence imposed was within the advisory guideline range and was not altogether inappropriate[.]" Motion at 3. In any event, these role-based arguments were all available to Walker at sentencing, and this Court sees no reason, less than two years later, to depart from its own well-reasoned view of the co-defendants' relative culpabilities.

In this respect, the only "new" fact Walker offers is the COVID-19 pandemic. *Id.* at 3. He says that "the Court should consider alternative sentences as contemplated under § 3553(a)(3)[.]" *Id.* But Walker is housed at FCI-Miami, *see id.* at 1, where (as of this writing) *zero* inmates have active COVID-19, *see* Bureau of Prisons COVID-19 Cases, available at https://www.bop.gov/coronavirus/ (last accessed May 3 2021). Walker notably doesn't quarrel with the BOP's modified operating procedures, which—as the preceding figure make clear—have been extremely effective at preventing infections. *See* Response at 5 (citing the Bureau of Prison's Modified Operating Procedures).

In sum, the Court has considered the § 3553(a) factors and finds that they weigh against a reduction here.

### III. 18 U.S.C. § 3582

District Courts have "no inherent authority" to modify a prison sentence. *United States v. Diaz-Clark*, 292 F.3d 1310, 1315, 1319 (11th Cir. 2002). Instead, the "authority of a district court to modify an imprisonment sentence is narrowly limited by statute." *United States v. Phillips*, 597 F.3d 1190, 1194–95 (11th Cir. 2010). The statute that governs sentence reductions for compassionate medical release provides, in pertinent part, as follows:

> **(c) Modification of an imposed term of imprisonment.**--The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and
>
> (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; and

18 U.S.C. § 3582(c)(1).

Because Walker is not "at least 70 years of age," he does not qualify for release under § 3582(c)(1)(A)(ii). The viability of his request thus turns on the "extraordinary and compelling reasons"

test in § 3582(c)(1)(A)(i). But Section 3582 never describes the kinds of "[e]xtraordinary and compelling reasons" that might "warrant a reduction." Under 28 U.S.C. § 994, however, the United States Sentencing Commission (the "Commission") is authorized to "describe what should be considered extraordinary and compelling reasons for sentence reduction [under 18 U.S.C. § 3582]." 28 U.S.C. § 994(t). And the Commission has helpfully defined the contours of the test as follows:

> **1. Extraordinary and Compelling Reasons.--**Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> **(A) Medical Condition of the Defendant.**
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is
>
> > (I) suffering from a serious physical or medical condition,
> >
> > (II) suffering from a serious functional or cognitive impairment, or
> >
> > (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> **(B) Age of the Defendant.--**The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13 cmt n.1.

The reference to "subdivision (2)" requires Walker to show that he is "not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. §

7

1B1.13(2). And § 3142(g), in turn, instructs federal courts to consider the following factors when determining whether a defendant poses a danger to the safety of any other person or the community:

> **(g) Factors to be considered.--**The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—
>
> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2)  the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

Walker bears the burden of establishing both that his circumstances qualify as "extraordinary and compelling reasons" and that he no longer represents a danger to any other person or the community. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *see also Cannon v. United States*, 2019 WL 5580233, at *2 (S.D. Ala. Oct. 29, 2019); *United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019).

As a preliminary matter, Walker cannot satisfy the "Age of the Defendant" test because he is 35 years old, not 65, and has not alleged any age-related decline. His request for relief, then, hinges on his ability to meet either of the two elements of the "Medical Condition of the Defendant" test. The first element requires him to show that he suffers from a "terminal illness." U.S.S.G. § 1B1.13 cmt n.1(1)(A)(i). The second requires him to establish that he suffers from any of three conditions "that substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt n.1(1)(A)(ii).

Walker points to three things that (in his view) "leave [him] disproportionately susceptible to COVID-19 infection." Mot at 4. *First*, he says, he is African American. As he explains, "[a]lthough representing a little over 13% of the U.S. population, roughly 33% of all COVID-19 hospitalizations are for African-American patients." *Id. Second*, he continues, he has asthma. *Id.* at 3. *Third*, he claims to suffer from "bad seasonal allergies." *Id.* at 2.

But these factors—even taken together—don't create the kinds of "extraordinary and compelling circumstances" that would entitle Walker to relief. Taking the asthma first, Walker doesn't dispute the Government's assertion—supported by his medical records—that his asthma is "in remission." Response at 4 (citing Medical Records at 2). And Walker cites no study for his position that a man with "seasonal allergies" is more likely than the average person to suffer some of COVID-19's more serious complications. *See generally* Motion. Nor does he suggest that BOP has failed to provide adequate medical care either for his asthma or for his "bad seasonal allergies." *Id.* He's thus failed to show that these conditions justify his early release. *Cf. United States v. Ballesteros*, 2020 WL 2733647, at *1 (S.D. Fla. May 26, 2020) ("[Defendant] has not included any facts on the severity of his asthma or hypertension, but they do not appear to be at such an acute level that his release is warranted after serving only 35% of his sentence."); *United States v. Brady*, 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020) ("While [the Defendant's] medical conditions are serious, release is not

9

justified because those conditions are stable and the Defendant has managed them in prison, he is located at a federal medical facility that is equipped to provide care both for his existing conditions and should he contract COVID-19, and because release would provide an undue windfall that would severely undermine the goals of the sentence this Court imposed.").

We turn, then, to Walker's claim that African Americans are more susceptible than other Americans to serious illness from COVID-19. *See* Motion at 4. For this proposition, Walker relies only on a two-and-a-half page NIH article from October 2020 titled "Commentary on COVID-19 and African Americans. The numbers are just a tip of a bigger iceberg." *Id.* That article, though, didn't posit that the virus targets black people more aggressively than, say, whites. It simply pointed out that, for a variety of socio-economic reasons, black people were infected in higher numbers and then had limited access to suitable healthcare. *See generally id.* None of this suggests that Walker—whose likelihood of contracting COVID-19 or receiving adequate BOP healthcare is identical to that of the other inmates at his facility (irrespective of race)—should be treated differently than those other inmates *because of* his race.

Nevertheless, even accepting that these factors *could* justify early release, Walker's Motion still fails. To begin with, he never describes his conditions as (1) a "serious physical or medical condition," (2) "a serious functional or cognitive impairment," or (3) a part of his "deteriorating physical or mental health because of the aging process," as required by U.S.S.G. § 1B1.13 cmt n.1(1)(A)(ii). *See generally* Mot. Nor does he contend that these diseases qualify as "terminal" illnesses under U.S.S.G. § 1B1.13 cmt n.1(1)(A)(i). *See id.*

The Court acknowledges that the spread of COVID-19 has been pervasive and devastating. It has challenged our institutions, undermined Americans' ability to maintain their economic security, and altered the way people interact. More fundamentally, it goes without saying, the pandemic has resulted in widespread suffering. In the United States alone, more than 32,000,000 people have tested

10

positive for the disease, and over 571,000 Americans have died from it. *See* CDC, *COVID Data Tracker*, available at https://covid.cdc.gov/covid-data-tracker/#cases_totalcases (last accessed May 3, 2021).

But "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]" *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Additionally, "the BOP Director has not found COVID-19 alone to be a basis for compassionate release." *United States v. Harris*, 2020 WL 1969951, at *2 (M.D. Fla. Apr. 24, 2020) (citing *United States v. Eberthard*, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020)). The Court sees no reason to depart from the BOP's well-reasoned view on this question.

Because Walker has not shown that his circumstances are either "compelling" or "extraordinary," his Motion must be **DENIED**.

### IV.     18 U.S.C. § 3142

Even if Walker *had* exhausted his remedies, and even if he *had* shown compelling circumstances, his Motion would still be denied because he has failed to establish that he no longer poses a danger to his community. As the relevant Sentencing Guidelines provision makes clear, the "extraordinary and compelling reasons" test only applies if "the defendant meets the requirements of subdivision (2)"—that is, only if the Defendant demonstrates that he no longer poses a threat to society, as defined by 18 U.S.C. § 3142.

Walker has not even attempted to show that he represents no such danger. *See generally* Motion. (failing to argue any of the § 3142 factors). And it was indisputably his burden to do so. *See Cannon v. United States*, 2019 WL 5580233, at *2 (S.D. Ala. Oct. 29, 2019); *United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019). This omission is fatal to his claim.

### V.     Home Confinement

In the alternative, Walker seeks placement in "house arrest, supervised release[,] or probation," *see* Mot. at 1—a request the Government likewise opposes, *see* Response at 2.

The Court has no authority to direct the BOP to transfer a prisoner to home confinement. As the Eleventh Circuit has held, "[i]t is undisputed that the authority to place a prisoner in home confinement rests solely with the BOP rather than the judiciary. And while federal law permits district courts to make the type of recommendation the [the defendant] requested, any such recommendation would have been non-binding." *United States v. Groover*, ____ F. App'x ____, 2021 WL 391882, at *3 (11th Cir. Feb. 4, 2021). This Court, then, does not have the authority to grant Walker the relief he seeks.

Of course, the Court could achieve the same result by simply reducing Walker's sentence to time-served and then "impos[ing] a term of supervised release equal to the unserved time and order, as a condition of that supervised release, that the defendant be confined to his home." *United States v. Spencer*, 2020 WL 5498932, at *2 (6th Cir. Sept. 2, 2020); *Israel*, 2020 WL 3893987, at *9 ("Although the Court does not have the authority to order a prisoner's release to home confinement, the Court does have the authority to reduce a defendant's sentence to time-served, impose a term of supervised release, and order home confinement as a condition of supervised release."). To do this, though, the Court would have to conclude that Walker has carried his burden of showing that he's entitled to that reduction, which, for the reasons set out above, he's failed to do.

\*\*\*

Accordingly, after a careful review of the parties' filings, the record, and the governing law, the Court hereby **ORDERS and ADJUDGES** that Walker's Motion for Reduction in Sentence [ECF No. 284] is **DENIED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 3rd day of May 2021.

                                                  ROY K. ALTMAN
                                                  UNITED STATES DISTRICT JUDGE

cc:    counsel of record